[No. 812.]

L. I. HOGLE ET AL., RESPONDENTS, *v.* B. N. LOWE ET AL., APPELLANTS.

PARTNERSHIP IN REAL ESTATE — NOTICE OF COPARTNERSHIP.—Lowe and Griswold were copartners in the business of saloon-keeping, and owned the lot and building they occupied, each holding the legal title to an undivided one-half. Lowe mortgaged his half interest, and upon the foreclosure of this mortgage, Griswold, having purchased the property under an execution sale in a suit brought by certain of the creditors against the copartnership, claimed that the real estate belonged to the copartnership, and was subject to the payment of the copartnership liabilities: *Held,* that the legal title to the property mortgaged having been in Lowe, it was incumbent upon Griswold to prove that such property was in fact a portion of the partnership assets, and that the mortgagees had notice thereof.

IDEM—INSOLVENCY OF COPARTNERSHIP.—If the premises were in fact partnership property, and the mortgagees had notice of such fact, the mortgagees would then be bound to inquire concerning the firm indebtedness.

REAL ESTATE, WHEN PARTNERSHIP PROPERTY.—Real estate purchased with partnership funds for partnership purposes, and appropriated to partnership uses, is, in equity, presumed to be partnership property, and it is, under such circumstances, immaterial whether the legal title is taken in the name of a part or all of the partners.

IDEM.—Individual real property brought into the partnership, by the copartners, at the time of its formation or afterwards, and, by proper agreement of the partners, converted into partnership property and appropriated to its uses, becomes a portion of the capital stock of the firm, and will be treated in equity as personalty, although standing in the name of an individual partner.

Idem —Upon a review of the testimony in this case: *Held*, that the court did not err in deciding that Lowe and Griswold held the real estate in question as tenants in common, and not as partners, at the date of the mortgage.

Appeal from the District Court of the Ninth Judicial District, Elko County.

The facts appear in the opinion of the court.

*R. R. Bigelow*, for Appellants.

I. The burden of the defense of being a *bona fide* purchaser without notice of equities rests upon the purchaser. There is no presumption in his favor, and he is required to prove affirmatively that he purchased without notice. (*Gallatain* v. *Erwin*, Hopkins's Ch., 48; *Long* v. *Dollarhide*, 24 Cal. 227; *Colton* v. *Seavey*, 22 Cal. 496; *Landers* v. *Bolton*, 26 Cal. 419; *Lawton* v. *Gordon*, 34 Cal. 38; Id., 37 Cal. 205; authorities cited in respondents' brief in *Scott* v. *Umbarger*, 41 Cal. 414.) It is not necessary that a purchaser should have positive knowledge of equities; anything that puts him upon inquiry is sufficient. (*Crosier* v. *McLaughlin*, 1 Nev. 348; *Lawton* v. *Gordon*, 37 Cal. 205; *Galland* v. *Jackman*, 26 Cal. 87; Story's Eq. Juris., sec. 400, 400 b.)

II. But admitting that the mortgagee and the plaintiff in this action had no actual knowledge of Griswold's rights, and no knowledge of anything that should have put them upon inquiry, still they cannot be held to have been innocent purchasers, for the fact that defendant Griswold was in possession of this property from November 22, 1872, up to the commencement of the attachment suit of Badt & Cohn in the fall of 1873, during which time this mortgage was made and purchased by plaintiffs, was constructive notice of his equity, not only to plaintiffs but also to Smith, the mortgagee. (*Duryea* v. *Burt*, 28 Cal. 587; *Woodson* v. *McKune*, 17 Cal. 300; Story's Eq. Juris., sec. 395; 8 Cal. 467; 7 Cal. 308.)

III. The real estate was partnership property. If Lowe and Griswold intended it to be partnership property then it had that character. Whether real property shall become partnership stock or not is a question of intention. (Pars.

on Part., 378; and note L; *Fall River Whaling Co.* v. *Borden,*
10 Cush. 462; *Dyer* v. *Clark,* 5 Metc. 562–582.)

The partnership was formed for the very purpose of using
this property. The real estate was a part of their capital
stock, equally as much so as the fixtures or stock on hand.
Their acts, taken in connection with the manner of the
formation of the partnership, and the purpose for which it
was formed, show that a partnership existed from the first
in this property. Their acts must all be considered in de-
termining the intention of the partners as to the tenure
by which this property should be held. (*Fall River Co.* v.
*Borden,* 10 Cush. 463.)

IV. The partners have a lien upon all copartnership prop-
erty for the payment of the firm's debts; and when such
property is sold to satisfy such debts, which is the case
here, the purchaser takes it relieved of all incumbrance made
by an individual partner for the personal debts. (*Jones* v.
*Parsons,* 25 Cal. 102; *Whitmore* v. *Shiverick,* 3 Nev. 288;
*Dupuy* v. *Leavenworth,* 17 Cal. 264; *Dyer* v. *Clark,* 5 Metc.,
562.)

V. It does not matter in whose name the real estate is
held; if it belongs to the partnership it is to be treated as
personalty. (Pars. on Part., 377; Coll on Part., 135; 9 Cal.
616; 10 Cush. 462.)

The general rule is that real estate, in order to become
firm property, must be purchased with partnership funds
for partnership purposes, but *Duryea* v. *Burt* (28 Cal. 583),
decides that there is no difference between property ob-
tained that way and property brought into the copartner-
ship by the partners, at the time of its formation, and there
is certainly none in principle.

*W. C. Van Fleet,* for Respondent:

I. The record showed an undivided half interest standing
in the name of Lowe, and the transaction of Lowe and Gris-
wold was not of a character to put either Smith, the mort-
gagee, or his assignees, Hogle and Gillett, upon inquiry as to
any latent claim by Griswold. The case is distinct from
any cited by appellant's counsel. Griswold held himself

out to the world by his own action as merely the tenant in common of Lowe, and is now estopped from claiming any equity as against either the mortgagee or his assigns.

II. In order to make real estate, standing in the name of individual members of a firm, partnership property, and charge it with trust in favor of partnership liabilities as against innocent purchasers, three indispensable conditions are necessary, to wit: First, that it must have been purchased with partnership funds; Second, for partnership purposes; and, Third, be appropriated for partnership uses. This rule is recognized by all the authorities cited by appellant.

The case of *Duryea* v. *Burt*, grew out of that anomalous relationship, a mining partnership, and is governed by peculiar and special rules; rules for the greater part that have been called into being for the protection of that large element engaged in mining for the precious metals on this coast.

The real estate of a partnership must be purchased with partnership funds to make it partnership property. (*Pugh* v. *Currie*, 5 Ala. 446; *Owens* v. *Collins*, 23 Ala. 837; *Matlock* v. *Matlock*, 5 Ind. 403; *Patterson* v. *Blake*, 12 Ind. 436.) If there is no proof that it is purchased with partnership funds, it will be presumed to be held by the parties as tenants in common or joint tenants. (*Thompson* v. *Bowman*, 6 Wal. 316.)

If not paid for by partnership funds then it is his property who pays for it, whatever use he permits to be made of it. (*Marvin* v. *Trumbull*, Wright. 386; *Wheatley* v. *Calhoun*, 12 Leigh. 264; *Owens* v. *Collins*, 23 Ala. 837; 4 Mumf. R. 316; 7 S. & R. 438.) In this case the property never was purchased with partnership funds or for partnership purposes. Lowe merely transfered an interest in it to Griswold, which created as to third persons, if not between the parties, only a tenancy in common; and Lowe lost no right or authority to convey away or dispose of his remaining interest in any manner he saw fit.

By the Court, LEONARD, J.:

Plaintiffs brought this action to foreclose a certain mortgage, set out in their complaint herein, given by defendant Lowe to one N. D. Smith, upon an undivided one-half interest in lot 7, in block E, in the town of Wells, Elko county, and by Smith transferred to plaintiff, for a valuable consideration. Lowe made default, but defendant Griswold answered and defended, upon the ground that, at the time the mortgage was made, the premises described therein were the copartnership property of the firm of Lowe & Griswold, of which firm defendant Lowe was a member; that said mortgage was given to secure a private debt of defendant Lowe; that at the time it was given, the firm was insolvent, and that afterwards the property was sold to satisfy debts owing to firm creditors, by the sheriff of Elko county; that Smith and plaintiff had notice of the fact that the property mortgaged by Lowe was partnership property of the firm. Defendant Griswold claimed the property through certain conveyances from the sheriff and his grantee. The cause was tried by the court without a jury, and the following facts and conclusions of law were found: That on the twenty-sixth day of November, 1872, defendant Lowe was the owner and in possession of lot 7, in block E, in the town of Wells, in Elko county, with the improvements thereon; that on the same day Lowe and Griswold entered into a copartnership for the purpose of carrying on the business of saloon-keeping in said town, and in a certain building situated on the premises; that on said day Lowe conveyed by deed to Griswold an undivided one-half interest in said lot and improvements, which deed was duly recorded in the office of the county recorder of Elko county, September 17, 1873; that defendants continued to occupy the premises until some time in October, 1873; made some improvements thereon, but how much or at what time does not appear; that the defendants bought in an outstanding title against the premises, but at what time, or how much was paid for the same is not shown; that on the twenty-first day of April, 1873, defendant Lowe executed and delivered to one N. D.

Smith, for a valuable consideration, the note and mortgage described in the complaint; that on the second day of May, 1873, for a valuable consideration, Smith sold and assigned the same to plaintiffs; that the mortgage was duly recorded in the office of the county recorder of Elko county, May 3, 1873; that on the twenty-first of April, 1873, the firm of Lowe & Griswold was indebted to the firm of Badt & Cohn in the sum of eight hundred and sixty-six dollars and fifty cents and were insolvent, but that neither Smith nor plaintiffs had notice of such insolvency; that on the fifteenth day of September, 1873, the firm of Badt & Cohn commenced an action in the same court to recover of Lowe & Griswold the sum of one thousand and thirteen dollars and eighty-nine cents, partnership liabilities of Lowe & Griswold, and on October 3, 1873, obtained judgment for the full amount sued for, besides costs; that execution was duly issued upon said judgment, and the premises in dispute were sold by the sheriff of Elko county to Gabriel Cohn, one of the plaintiffs in said action; that thereafter a deed was duly executed and delivered by the sheriff, conveying said premises to Cohn, who, prior to the commencement of this action, conveyed the same to defendant Griswold; that plaintiffs in this action had no notice that the property in dispute was claimed as copartnership property of defendants. As conclusions of law, from the foregoing facts, the court found that the defendants, Lowe and Griswold, were not partners in the ownership of the premises, but were tenants in common in the whole lot and improvements thereon; that plaintiffs were entitled to a decree of foreclosure against both defendants, and to other relief usual in such cases. Decree was entered accordingly.

Defendant Griswold appeals from the decree and the order overruling his motion for a new trial.

There are several assignments of error, one of which only, as we regard the case, requires our examination, viz.: Did the court err in finding that defendants were not partners in the premises mentioned, but were tenants in common therein?

The fact found by the court, that neither Smith nor

plaintiffs had notice of the insolvency of Lowe & Griswold, even though it is incorrect, is harmless, for the reason that it was not material whether they had notice of the existence of the copartnership indebtedness or not. Plaintiffs were bound to inquire concerning the firm indebtedness, if the premises were partnership property, and they had knowledge that it was so held, or take the consequences of their own laches. (*Hoxie* v. *Carr*, 1 Sumner, 192.) The legal title to the property mortgaged having been in Lowe, it was incumbent upon defendant Griswold to prove that such property was in fact a portion of the partnership assets, and that plaintiffs had notice thereof. He was not obliged to prove that plaintiffs had knowledge of the insolvency of Lowe & Griswold. The several assignments that the court erred in failing to find certain alleged facts cannot be considered here, for the reason that the court was not requested to find the same, and an exception taken to its refusal. (*State* v. *Manhattan Co.*, 4 Nev. 318; *Warren* v. *Quill*, 9 Nev. 259.)

There is but little evidence upon the question whether the defendants, at the time the mortgage was given, were partners in the premises in question or tenants in common only. The legal title to an undivided one-half interest was in each, as tenants in common. Defendant Griswold testified as follows:

"About the twenty-second day of November, 1872, the defendant Lowe and myself formed a copartnership for carrying on the saloon business in the town of Wells, in this county. Lowe was then in the saloon business, carrying it on in the building upon which this mortgage was given. I bought an undivided one-half interest in the business, which included the premises upon which the mortgage was given, with the fixtures, stock on hand and everything appertaining to the business. We were to be equal partners, under the firm name of Lowe & Griswold, and I took a deed from Lowe for one-half of the premises, which deed was filed and recorded, at request of E. H. Griswold, September 17, 1873, * * * in Liber 5 of deeds, by F. A. Rogers, recorder."

Witness then introduced in evidence a deed from Lowe to him, dated November 26, 1872, conveying an undivided one-half interest in the said property, including the buildings and appurtenances.    He then continued as follows:

"That deed was taken by me in pursuance of our agreement to become copartners.    I took charge of the saloon immediately, and carried on the business; I had exclusive charge of it for about five months after we commenced business together, as Lowe was away; we conducted the business under the firm name of Lowe & Griswold, and continued to do business in the same way and in the same place until we were attached, at the suit of Badt & Cohn, in September, 1873; during that time we made some repairs upon the building that were paid for by the firm; we built an icehouse on the lot, and that was paid for by the firm; all the expenses of the business and of keeping the premises in repair, making new buildings, etc., were borne by the firm and were done in its name; when I bought in, Lowe had nothing but a possessory right to the lot, and we afterwards bought it from the railroad company; it was paid for by the firm; we got an insurance upon the building in the name of the firm, and it was paid for by the firm; the only way in which we ever used the building was for keeping a saloon in it; the firm bought a billiard table and put it in; this was paid for in part by the firm and part was collected in the suit of Badt & Cohn; everything was done in the name of the firm and by the firm; I know that N. D. Smith had notice that the premises were the copartnership property of the firm, as he was present when Lowe and I made the agreement to go into business together, and heard it all; this agreement was that I should buy one-half of the business, including the buildings, and we would go in as equal partners in it; the capital stock of the firm consisted of the premises in controversy, the fixtures and stock on hand; at the time this mortgage was given by Lowe, on the twenty-first day of April, 1873, he was indebted to the firm in the sum of five hundred dollars or over; we were then indebted to Badt & Cohn in something over nine hundred dollars."

It was here admitted that at the date of the mortgage,

the firm of Lowe & Griswold was insolvent and so continued until dissolution.

Witness resumed: "I think plaintiff, Gillett, must have known that I was a partner in this property, as he lived in the same place all the time and was about the saloon frequently after I bought in; the Wells is not a large town; I was in possession of the property from the time I bought in until we were attached by Badt & Cohn."

On cross-examination, witness Griswold said: "We (Lowe and myself) were only partners in the saloon business; we were not partners in a real estate business any further than the real estate in dispute; we did not buy and sell real estate; I think Gillett must have known I was a partner in the premises, as he was around there frequently during the whole winter; there was no special agreement between myself and Lowe that the real estate should be partnership property."

C. E. Gillett testified on behalf of plaintiffs as follows: "I am one of the plaintiffs in this action; I paid N. D. Smith the full face of the note sued on in this action; I paid it in lumber; I did the business of Hogle & Gillett at the Wells; Mr. Hogle was there only occasionally—once or twice during the winter of 1872 and 1873; I had no knowledge that Griswold was a copartner in the premises in dispute when I bought the note and mortgage; I had no positive knowledge that he had any interest in the property, but supposed he had bought one-half of it."

On cross-examination, he said: "I had no positive knowledge that Lowe and Griswold were copartners in the lot and building upon which the mortgage was given when I bought it. I knew they were partners in the saloon business; and knew they were in this building; I made no inquiry to ascertain what Griswold claimed there; I knew that some one owned one-half of the building and lot with Lowe; I made no inquiry as to who it was that owned it, nor what rights they claimed; I knew that Griswold was in possession of the building the winter before I bought this mortgage, and at the time."

The above is all the testimony that in any manner affects

the question under discussion. It is claimed by respondents that before real estate standing in the names of individual partners as tenants in common can be declared partnership property, and be treated as such by a court of equity, it must appear that it was purchased with partnership funds, for partnership purposes, and appropriated to partnership uses. On the contrary, appellant contends that property brought into a partnership by the partners individually, for the purposes of the partnership, and appropriated to partnership uses, becomes a portion of the common stock, although it be real property and the legal title is in the several partners as tenants in common.

It is well settled by authority that real estate, purchased with partnership funds for partnership purposes, and appropriated to partnership uses is, in equity, presumed to be partnership property; and that, under such circumstances, it matters not if the legal title is taken or held in the name of a part or all of the partners as tenants in common. Upon proof of these facts of purchase and appropriation, unless the presumption arising therefrom be rebutted, equity will treat the property as partnership stock. (Story on Part. 153, and cases there cited; *Duryea* v. *Burt*, 28 Cal. 580.)

We think it equally well settled that individual real property brought into the partnership by the partners at the time of its formation or afterwards, and, by proper agreement of the partners, converted into partnership property and appropriated to its uses, becomes a portion of the capital stock of the firm, and will be treated in equity as personalty, although standing in the name of an individual partner. (Lindley on Part., 450; Pars. on Part., 366; Story on Part., secs. 15, 16c, 98, 371, 372, 373, and p. 158; Cow. on Part., 254–5; Bissett on Part., 33, 36; *Hoxie* v. *Carr*, 1 Sumner, 180; *Duryea* v. *Burt*, 28 Cal. 588; *Sigourney* v. *Munn*, 7 Conn. 11; *Frink* v. *Branch*, 16 Conn. 269; *Markham* v. *Merrell*, 7 How. (Miss.), 444; 1 Am. Lead. Cas. 496.)

But, although the propositions of law just stated be considered settled, still the difficulty remains as to the evidence and extent of Lowe and Griswold's intentions and agreements concerning the tenure of the property in question.

When property is purchased with partnership funds for partnership purposes, and appropriated to partnership uses, no further proofs should be, and certainly none are, required in order to establish the evident intention and agreement of the partners. In such case, every act impresses upon the property the character of personalty. But the mere fact that real property held by members of the firm as tenants in common is used by the partners in the partnership business for partnership purposes, or an agreement to so use it, is not of itself sufficient to convert it into partnership stock; there must be some evidence of further agreement to make it partnership property. (Vol. 1, Am. Lead. Cas., 496.) At law, real property used by a partnership is deemed to belong to the person in whose name the title by conveyance stands; and it is so considered in equity, until it is shown to be partnership property, either by evidence establishing a proper agreement, or by proof of purchase with partnership funds for partnership purposes.

In *Sigourney* v. *Munn, supra,* the court say: "The case of *Coles* v. *Coles,* 15 Johns. 159, hardly falls within this case, and certainly does not extend beyond it. The partners, Steven and Willet Coles, sold and conveyed two lots of land for nine thousand dollars, which sum was paid by the purchaser to the defendant. To recover this sum, the administrator of Steven brought an action against Willet, for money had and received. A partnership had existed between the intestate and the defendant in relation to the business of a still house situate on the above lots of land; but it does not appear that the land or house was bought with partnership property, or that they were any part of the company's fund. A verdict was rendered in favor of the plaintiff, under the judge's direction, for a moiety of the sum received by the defendant, on the ground that the intestate was entitled to only half of the land, the partners being joint owners or tenants in common of it. Now, on these facts, that they were mere tenants in common and not partners in the land is too clear to be questioned." In the same opinion (p. 20) the court say: "There remains a third class of cases, which I will now consider, and that is when partners in their copart-

nership articles, or at the time of a purchase, agree that real estate advanced as stock or acquired with partnership funds shall form a part of the company's property. It was decided by Lord Thurlow (in *Thornton* v. *Dixon*,) that a copartnership agreement might alter the nature of real property if it were express, and thereby make it partnership fund, (11 Ves. 665-6-7; 7 Ves. 425,) and in two cases which came before the late learned master of the rolls, Sir William Grant, he acted upon the above decision and considered it to conclude the question. (*Bell* v. *Phyn*, 7 Ves. 453*b*; *Balmain* v. *Shore*, 9 Ves. 500.) In the case cited from 7 Serg. & Rawle, 438, Ch. J. Tilghman observed that by positive agreement as between the partners and their heirs and representatives, the character of real estate may be changed; that it may be brought into stock and considered as personal property. I think there exists no reasonable doubt that the land in question, put into the company stock in part, and partly bought for partnership purposes with partnership funds, and the whole being under an express agreement, that it should be partnership property, must in equity be considered and treated in this light." In *Frink* v. *Branch*, (16 Conn. 269,) *supra*, the court use this language: "We supposed our law, so far as it is necessary for me to look into it in the present case, was settled by this court in the case of *Sigourney* v. *Munn*, (7 Conn. 11.) The doctrine of that case is, if real estate be acquired with partnership funds for partnership purposes, or was originally put into the company as stock by agreement, then it will be considered as partnership stock."

See also: *Jarvis* v. *Brooks*, 27 N. H. 66; *Craig* v. *Leslie*, 3 Wheat. 563; *Wheatley's Heirs* v. *Calhoun*, 12 Leigh, 273. In *Heirs of Ludlow* v. *Cooper's Devisees* (4 Ohio Stat. 8) the court say: "It is very clear that although the land was not purchased with partnership funds, but was to be purchased with the separate funds of Cooper and Ludlow, in equal portions, the property was to be so considered and treated; that it was, by agreement, to be sold and converted into money, and each partner to share alike in the profits and, of course, to share in the losses. It is the very case put in

Story, above cited, in which he says, in substance, that such real estate will, to all intents and purposes, be deemed personal property if the parties themselves have, by their agreement, impressed upon it the character of personalty."

In *Duryea* v. *Burt* (*supra*) Sawyer, J., says: "It may be that the claims before owned and purchased in severalty, in undivided interests, were held by them throughout their connection as tenants in common. Whether they were or were not is not distinctly found as a fact, and we should not be justified in determining the question from the facts found. Those interests were, doubtless, originally purchased as tenancies in common; but whether from the evidence before the court, and in the manner in which the parties blended their interests in those claims with their subsequent purchases, and in working the whole, the court would be justified in finding that they put in the claims originally held, with the new purchases as partnership property, it is not our province now to determine. That will be a fact to be determined on the new trial. If so, it became partnership property and subject to all the incidents of such property. If not, and it was originally held, and still continues to be held, as a tenancy in common, then it was not partnership property, and the plaintiff has no claim to have the sum due him from his co-tenant or copartner in other matters charged upon it."

And, finally, in *McDermot* v. *Laurence* (7 Serg. & Rawle, 443), the court say: "But, certainly, where it is the intention of partners to bring real property into the common stock, it would be prudent to put their agreement on record, in order that purchasers may not be deceived. There is no decision which goes so far as to affect a mortgagee circumstanced like the plaintiff in this suit. Even Lord Eldon has not considered the property as personal, unless it was made so by the agreement of the parties or purchased with their funds."

Applying the principles established by the above cases to the findings of fact and conclusions of law considered in the light of the proofs in this case, we are of the opinion that the court did not err in deciding that defendants held the

property in question as tenants in common, and not as partners, at the date of the mortgage. It is true that defendant Griswold testified that he and Lowe held the property in partnership, and that it was a portion of the capital stock of the firm. But it is evident that such were his conclusions from other facts, not that there was ever any agreement or positive understanding that it should be so; for, upon his cross-examination, he stated definitely, that "there was no special agreement between myself and Lowe that the real estate should be partnership property." We have no doubt that Griswold regarded the premises as partnership property; but, from the fact that Lowe mortgaged his undivided one-half, there is equal reason to presume that he thought otherwise. Without proof to that effect, we certainly cannot suppose he mortgaged property for an individual debt, which, in law, he had no right to so incumber. There is no proof that Lowe ever recognized Griswold as partner in the house and lot, unless by his acts in making improvements, purchasing an outstanding title, insuring the property, etc.; and as to them, they were as consistent with the idea of a tenure of the property as tenants in common, as partners. Being equal owners in it, they were equally interested in making improvements upon it, perfecting their title to it, and guarding themselves against loss by fire. Had the property been purchased with partnership funds, or had it, by a definite, proper agreement, been converted into partnership property, then the acts of defendants, as above stated, would have been additional proof of such conversion.

Should we admit that an understanding or agreement of partners, sufficient to convert real property not purchased with partnership funds, and standing in the names of individual members as tenants in common, into partnership stock, can be shown to have been made by the mere acts and conduct of the partners (which question we do not decide), it would still be true, in this case, that there is not sufficient evidence of such conversion.

Under all the facts and circumstances of the case, we do not feel justified in disturbing the findings and conclusions

of the court below as to the tenure of the property in question; and having arrived at this conclusion, it is not necessary to consider the question of notice.

The order and decree of the court below are affirmed.